# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br><br>v.<br><br>RUBEN DELHORNO,<br><br>                              Defendant. | Case No. 11-CR-46-JPS<br><br>**ORDER** |

## I.     INTRODUCTION

On January 26, 2012, the Defendant, Ruben Delhorno ("Delhorno"), entered a plea of guilty as to a single-count Indictment charging him with possession with intent to deliver 500 grams or more of cocaine. *See* (Docket #48 and #49). On October 5, 2012, he was sentenced to 60 months of imprisonment and four years of supervised release for the offense of conviction. (Docket #59). Delhorno did not appeal.

Delhorno is a lawful permanent resident alien of the United States, not a citizen, *see* (Docket #74-1), and is therefore subject to deportation based on his conviction in this case of an aggravated felony. *See* 8 U.S.C. § 1101(a)(43)(B) (The term "aggravated felony" is defined to include "illicit trafficking in a controlled substance."); 8 U.S.C. § 1227 ("Any alien who is convicted of an aggravated felony at any time after admission is deportable."). On or around May 1, 2017, Delhorno completed his sentence and was immediately transferred to the custody of U.S. Immigration and Customs Enforcement ("ICE") for removal processing. *See* (Docket #74-1).

In an effort to avoid removal, Delhorno now seeks to have his conviction overturned. On October 13, 2017, he filed in this Court—his sentencing court—a petition for a writ of coram nobis alleging that his counsel and the Court did not provide adequate warnings prior to Delhorno entering his guilty plea about the possible immigration consequences of his conviction. (Docket #74). Delhorno claims that he "never would have pled guilty to a crime knowing [he] would never be allowed to remain in the United States and instead would be deported to Mexico, a country [he] has no ties to whatsoever." (Docket #74-1 at 2). Delhorno relies on recent precedent from the Supreme Court, *Lee v. United States*, 137 S.Ct. 1958 (2017), for the proposition that his counsel's and the Court's deficient warnings warrant vacation of his conviction.

The government responded to Delhorno's petition, stating that it believes the transcripts from Delhorno's change of plea and sentencing hearings leave doubt as to whether Delhorno was adequately informed of the deportation risk associated with his plea. (Docket #81).

For the reasons explained below, Delhorno's petition will be denied.

## II. BACKGROUND

Delhorno's petition is accompanied by an affidavit and a transcript of the change of plea hearing in this case. (Docket #74, #74-1, and #74-2). In considering Delhorno's petition, the Court has also reviewed the transcript of the sentencing hearing, *see* (Docket #80), and the presentence report, *see* (Docket #51). From those materials, the Court gleans the following facts.

On February 23, 2011, a single-count indictment was filed in this district charging Delhorno with possession with intent to distribute cocaine. During plea negotiations, Delhorno discussed "[his] entire case fully with [defense counsel], including informing [defense counsel] that [Delhorno]

came to the United States when [he] was four years old and that [he] was a lawful permanent resident alien and not a U.S. citizen." (Docket #74-1 at 1). According to Delhorno, defense counsel did not inform him that "by pleading guilty to the underlying offense of felony drug possession and distribution, [Delhorno] was subject to mandatory removal and/or deportation from the United States, the only country [Delhorno has] ever known." *Id.* at 2.

On January 9, 2012, the government and Delhorno entered into a plea agreement. On January 26, 2012, the Court held a change of plea hearing at which Delhorno entered, and the Court accepted, Delhorno's guilty plea as to the indictment. At that hearing, the Court inquired about Delhorno's citizenship, and Delhorno informed the Court that he was born in Mexico and is a permanent resident of the United States, not a citizen. There was no discussion about the immigration consequences of the offense to which Delhorno was pleading guilty.

Following the change of plea hearing, a United States Probation officer prepared a presentence investigation report to assist the Court at sentencing. The Probation officer's report notes that Delhorno explained to him his status as a resident alien and further explained that he "understands this may present problems for him, but he is trying to make arrangements to remain in the United States." (Docket #51 at 14). The report goes on to state that "[t]he Bureau of Immigrations and Customs Enforcement confirmed Mr. Delhorno was granted legal permanent resident status on 4/29/89. At this time, the defendant is not under investigation for deportation, but upon entry of judgment, the matter will be investigated." *Id.*

On October 5, 2012, the Court sentenced Delhorno. Defense counsel spoke on Delhorno's behalf during hearing, at one point informing the Court of Delhorno's attempts to secure a "cooperator's visa to remain in the United States because he is a resident alien and never sought citizenship[.]" (Docket #80 at 10). The immigration consequences of Delhorno's conviction were not otherwise discussed at sentencing.

As a non-citizen of the United States, Delhorno was subject to classification by the Federal Bureau of Prisons ("BOP") as a "deportable alien" when he was taken into BOP custody. *See* BOP Program Statement 5100.08, Inmate Security Designation and Custody Classification, September 12, 2006, Chapter 5, Page 9, available at *https://www.bop.gov/policy/progstat/5100_008.pdf*.

### III. ANALYSIS

The Court first turns to the nature of Delhorno's request for relief. He has petitioned for a writ of coram nobis, a seldom-allowed method of collaterally attacking a criminal conviction for a person who is no longer in custody pursuant to his conviction and therefore cannot seek habeas relief under 28 U.S.C. § 2255 or § 2241. *Chaidez v. United States*, 568 U.S. 342, 369 n.1 (2013).

The authority of federal courts to grant a writ of coram nobis is conferred by the All Writs Act, which permits "courts established by Act of Congress" to issue "all writs necessary or appropriate in aid of their respective jurisdictions." *United States v. Denedo*, 556 U.S. 904, 910 (2009) (quoting 28 U.S.C. § 1651(a)). In order to "confine the use of coram nobis so that finality is not at risk in a great number of cases," the Supreme Court has limited the availability of the writ to "extraordinary cases presenting circumstances compelling its use to achieve justice." *Id*. at 911 (quotations

omitted). "Another limit, of course, is that an extraordinary remedy may not issue when alternative remedies, such as habeas corpus, are available." *Id.* (citations omitted).

In Delhorno's case, there was an alternative remedy he could have pursued when he recognized the alleged deficiencies in the warnings given to him by counsel and the Court regarding probable deportation: He could have filed a petition for a writ of habeas corpus. The statute governing writs of habeas corpus stemming from federal criminal proceedings, codified at 28 U.S.C. § 2255, contains a one-year statute of limitations. The limitations period runs from the latest of:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented *could have* been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f) (emphasis supplied).

When no appeal is taken, a judgment of conviction becomes final, *see* § 2255(1), ten business days after entry, when the time for filing a direct appeal expires. *See Holmes v. United States*, No. 03-CR-0191, 2011 WL 1539901, at *1 (E.D. Wis. Apr. 21, 2011).

Section 2255(4) resets the limitations period's beginning date, moving it from the time when the conviction became final to the later date on which the particular claim accrued. *Ryan v. United States*, 657 F.3d 604, 607 (7th Cir. 2011). The relevant inquiry is how long a "duly diligent prisoner" would take to discover the facts leading to his claim. *Id.*

In this case, Delhorno discovered, or could have discovered, that his conviction would make him deportable, at the latest, during the preparation of the presentence report. The Probation officer who authored the report stated that Delhorno knew his non-citizenship could present a problem for him, but that Delhorno was "trying to make arrangements to remain in the United States." (Docket #51 at 14). Delhorno also knew, or could have known by reviewing the presentence report, that although he was not at that time under investigation for deportation, ICE would investigate the matter upon entry of judgment. *Id.* Then, if Delhorno had any uncertainty about the meaning of that statement in the report, he had plenty of time to confer with counsel, the government, or the Court regarding the likelihood of his deportation. Therefore, a "duly diligent" person in Delhorno's circumstances would have discovered the effect of his guilty plea before sentencing, which came almost ten months after he pleaded guilty.

Nevertheless, Delhorno failed to take any steps whatsoever regarding his immigration status until he filed this petition five years later, and the Court cannot view that period of inactivity as anything other than a marked lack of diligence. That Delhorno actually discovered the certainty of his deportation in May 2017 is of no legal significance because Delhorno *could have* discovered that he was deportable as an aggravated felon as early as October 2012.

Accordingly, the Court concludes that the limitations period prescribed by Section 2255 regarding Delhorno's ineffective assistance claim concluded in late October 2013, one year after his time to appeal his judgment of conviction expired. Because he could have learned the facts underlying his ineffective assistance claim as early as October 2012—which is, of course, earlier—the discovery rule of Section 2255(f)(4) does him no good. Delhorno filed the instant petition well past the expiration of the statute of limitations for a Section 2255 claim.

Having missed his time to file a Section 2255 claim, Delhorno cannot now "lever his way into" the same relief he could have sought under that section by filing a petition for a writ of coram nobis. *See Morales v. Bezy*, 499 F.3d 668, 672 (7th Cir. 2007) (finding that a prisoner who missed his Section 2255 deadline could not seek the same relief through 28 U.S.C. § 2241, which offers a writ of habeas corpus to a prisoner whose Section 2255 option was not an adequate or effective). A writ of coram nobis, like a writ under Section 2241, is only available when other more traditional remedies are not. *See Denedo*, 556 U.S. at 911. Delhorno, like any other prisoner, could have taken advantage of Section 2255 to raise issues regarding his counsel's assistance at the plea stage. Because he did not, his attempt to do so now—by way of a coram nobis petition—is foreclosed.

This result is not to the contrary of *Lee v. United States*, 137 S. Ct. 1958, 1964 (2017), on which Delhorno relies. In that case, decided last term, the Supreme Court considered a claim for ineffective assistance of counsel brought by a petitioner whose defense attorney gave him incorrect immigration advice prior to the petitioner pleading guilty. Applying the familiar test under *Strickland v. Washington,* 466 U.S. 668 (1984), for a Sixth Amendment ineffective assistance claim, the Court determined that (1) the

attorney's performance fell below an objective standard of reasonableness and (2) there was a reasonable probability that, but for the attorney's unprofessional errors, the result of the proceeding would have been different; that is, the petitioner would not have pleaded guilty. *Id.* at 1967.

But, importantly for present purposes, the petitioner in *Lee* brought his ineffective assistance claim in a timely petition under Section 2255. *See Lee v. United States*, No. 2:09-CR-20011-BBD, 2014 WL 1260388, at *3 (W.D. Tenn. Mar. 20, 2014), *aff'd,* 825 F.3d 311 (6th Cir. 2016), *rev'd and remanded,* 137 S. Ct. 1958 (2017), and *vacated sub nom. Jae Lee v. United States*, 869 F.3d 400 (6th Cir. 2017). This Court is foreclosed from even reaching the analysis conducted by the Supreme Court in *Lee* because Delhorno has not come to this Court with a procedurally proper petition.

Finally, even if this Court were to consider the merits of Delhorno's claim in light of *Lee*, the claim would fail on the second prong of the *Strickland* test. The petitioner in *Lee* was able to convince the Supreme Court, based on the "unusual circumstances" of his case, that there was a reasonable probability that he would not have pleaded guilty but for his counsel's bad advice (affirmatively telling petitioner that he would *not* be deported). *Id.* at 1967. Several factors supported the Court's decision: (1) both Lee and his attorney testified in a hearing on the habeas petition that Lee would have faced trial had he known that he would have been deported; (2) Lee had strong family connections to the United States where he had lived for three decades; (3) when he was warned of potential immigration consequences by the district judge, he responded "'I don't understand,' and turned to his attorney for advice . . . [and] [o]nly when Lee's counsel assured him that the judge's statement was a 'standard warning' was Lee willing to proceed to plead guilty." *Id.* at 1968.

The Supreme Court warned that courts "should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." *Id.* at 1967. "[C]ontemporaneous evidence to substantiate a defendant's expressed preferences" should instead be the touchstone. *Id.* Thus, a lack of contemporaneous evidence showing that the defendant would have rejected a plea if he properly understood its immigration consequences is grounds for denying a motion under the *Strickland* prejudice prong.

Delhorno has presented nothing more than *post hoc* assertions about how he would have pleaded if his counsel or the Court had explicitly informed him that his conviction would render him deportable. That is not sufficient to overturn his conviction.

### III. CONCLUSION

For the reasons stated above, Delhorno's petition for a writ of coram nobis will be denied. His subsequently-filed motion for a status conference regarding his petition, *see* (Docket #82), will be denied as moot.

Accordingly,

**IT IS ORDERED** that Defendant's petition for a writ of coram nobis (Docket #74) be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that Defendant's motion for a status conference (Docket #82) be and the same is hereby **DENIED as moot**.

Dated at Milwaukee, Wisconsin, this 30th day of March, 2018.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge